| | | |
|---|---|---|
| **HAHN & HESSEN LLP**<br>488 Madison Avenue<br>New York, New York 10022<br>Telephone: (212) 478-7200<br>Facsimile: (212) 478-7400<br>Edward L. Schnitzer, Esq.<br>Sarah M. Gryll, Esq. | **HORWOOD MARCUS & BERK CHARTERED**<br>500 West Madison, Suite 3700<br>Chicago, Illinois 60661<br>Telephone: (312) 606-3236<br>Facsimile: (312) 267-2202<br>Jason M. Torf, Esq. | **THE HOWARD LAW FIRM LLC**<br>307 North Michigan Avenue<br>Suite 1214<br>Chicago, Illinois 60601<br>Telephone: (312) 372-7048<br>Facsimile: (312) 372-9239<br>David A. Howard, Esq. |

*Attorneys for Shobhana Kasturi*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                                                      :
                                                                                    :       Chapter 7
Jacoby & Meyers—Bankruptcy LLP, *et al*.,            :
                                                                                    :       Case No. 14-10641
    Debtor.                                                       :
---------------------------------------------------------------x
JIL MAZER-MARINO, as Chapter 7 Trustee for    :
Jacoby & Meyers—Bankruptcy LLP and                  :
Macey Bankruptcy Law, P.C.,                                  :
                                                                                    :
    Plaintiff,                                                     :
                                                                                    :
v.                                                                                 :       Adv. No. 15-1115
                                                                                    :
THOMAS G. MACEY, JEFFREY J. ALEMAN,     :
RICHARD K. GUSTAFSON, II, SHOBHANA       :
KASTURI, GEORGE MACEY, AND JASON          :
SEARNS,                                                                     :
                                                                                    :
    Defendants.                                                 :
---------------------------------------------------------------x

## MOTION TO DISMISS

NOW COMES, Defendant, SHOBHANA KASTURI ("Kasturi"), for her Motion to

Dismiss against Plaintiff, JIL MAZER-MARINO, as Chapter 7 Trustee for Jacboy & Meyers-

Bankruptcy LLP and Macey Bankruptcy Law, P.C. ("Mazer-Marino") pursuant to Rule 12(b)(6)

1

of the Federal Rules of Civil Procedure, as incorporated into this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Rule 12"), states:[1]

**I.    Introduction**

Mazer-Marino's Complaint alleges various causes of action against Kasturi arising out of her former alleged employment by Jacoby & Meyers ("J&M") and/or Macey Bankruptcy Law, P.C. ("Macey Law," together with J&M, the "Debtors").  Kasturi is one of four defendants. Mazer-Marino concludes, without any factual support or basis, that Kasturi was an owner and officer of Debtors who controlled their operations.[2]  Mazer-Marino's claims against Kasturi fall into two categories: (1) purported preferential payments and fraudulent transfers pursuant to Sections 547 and 548 of the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act (Counts III-X); and (2) Negligence (Count I).  In total, Mazer-Marino seeks repayment of $2,401,150.86 in transfers allegedly made to Kasturi.  In addition to her failure to state a claim, Mazer-Marino's complaint fails under both Fed. R. Civ. Proc 8(a)(2) ("Rule 8"), which requires a short and plain statement of each claim, and 9 ("Rule 9"), which sets a heightened pleading standard for fraud-based claims.  More specifically: (1) Mazer-Marino does not allege any transfers to Kasturi within the 90 days prior to the Petition Date; (2) relative to all alleged transfers in the one year, two years and four years prior to the Petition Date, Mazer-Marino fails to allege any facts supporting her naked legal conclusions that: (a) the Debtors were insolvent at

---

[1]    Kasturi understands that other defendants intend to file a motion to withdraw the reference as to this adversary proceeding.  When such motion is filed, Kasturi intends to join. Accordingly, Kasturi files this motion to dismiss without prejudice to her right to seek withdrawal of the reference as to this adversary proceeding, which right Kasturi does not waive but rather expressly reserves.  Further, by filing this motion to dismiss, Kasturi neither consents to the jurisdiction of the bankruptcy court over this adversary proceeding nor to the entry of final order by the bankruptcy court in this adversary proceeding.

[2]    Kasturi was never employed by J&M.  Further, Kasturi was never an owner or officer, nor did she control any Debtor.

2

the time of any transfer; (b) Kasturi was an insider; and (c) the transfers were for an antecedent debt; and (3) relative to purported fraudulent transfers, Mazer-Marino fails to allege any facts that transfers were made to Kasturi with actual intent to hinder, delay, or defraud, nor does she allege any facts supporting badges of fraud. Instead, in each instance, Mazer-Marino merely relies upon prefatory conclusions approximating requisite elements that are otherwise devoid of factual support.

Concerning the negligence claim, Mazer-Marino fails to allege any facts that Kasturi possessed the duties she is accused of "breaching." Mazer-Marino merely concludes that as a "Senior Attorney," Kasturi owed a duty of care and that she supervised a call center. On this basis alone, Mazer-Marino concludes that Kasturi "breached" her "duties" by failing to, for example, return client funds, communicate with clients that cases had been transferred and numerous other purported "breaches." In each case, Mazer-Marino makes no factual allegation that Kasturi's duties, functions and responsibilities ever included the "duty" she is accused of breaching. Mazer-Marino relies on unsupported conclusions and fails to allege facts supporting the elements of a negligence claim.

Lastly, Mazer-Marino baselessly and harassingly seeks as "damages" the recovery of attorneys' fees, but Mazer-Marino does not identify any statute, law or agreement pursuant to which Kasturi could be liable to pay attorneys' fees. For all of these reasons, Marino's Complaint must be dismissed.

## II.    Standard for Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as adopted and incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. In reviewing such a

motion, the Court takes as true all factual allegations in the plaintiff's complaint and draws all reasonable inferences in his favor. *Biro v. Conde Nast,* 883 F. Supp. 431, 455 (2nd Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, as adopted and incorporated by Rule 7008 of the Federal Rules of Bankruptcy Procedure, by providing "a short and plain statement of the claim showing that the pleader is entitled to relief, such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A statement showing entitlement to relief under Rule 8(a)(2) must include "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. To be plausible the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *In re Southwest Waffles, LLC*, 460 B.R. 132, 137 (6th Cir. (BAP) 2011) (*quoting Tam Travel, Inc. v. Comm'n Antitrust Litig.*, 583 F. 3d 896, 903 (6th Cir. 2009)); *Swanson v. Citibank, N.A.*, 614 F. 3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Copelan v. Techtronics Industries Co., Ltd.*, 2015 WL 1413107, at *4 (S.D.Cal. Mar. 27, 2015) ("The court need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice").

### III.    Background Allegations

Mazer-Marino's Complaint bloviates through 49 pages and nearly 300 paragraphs of inflammatory, superfluous allegations, many of which address prior alleged investigations by governmental bodies against one or more other Defendants that have nothing to do with Kasturi

4

and are otherwise irrelevant, thereby plainly violating Rule 8. Notwithstanding its verbosity, Mazer-Marino's Complaint nevertheless fails to allege facts giving rise to any claim for relief against Kasturi. A review of the Complaint readily reveals that Kasturi is not the focus of this lawsuit. She was allegedly a "senior attorney," supervised and controlled by other Defendants. The vast, overwhelming majority of the allegations do not bear upon Kasturi and, instead, focus upon other Defendants, primarily Macey. Indeed, the sum and substance of the allegations/conclusions against Kasturi are summarized as follows:

> (1) "The Defendants [defined to include Kasturi] are the owners and officers of the Debtors and were in control of the Debtors, a law firm …" (Complaint, Par. 1);
>
> (2) "These Four Defendants shut the Debtors' operations down in a matter of months, without regard to the duties they owed to their creditors and clients, resulting in damages to the Debtors' estates" (*Id*. at par. 2);
>
> (3) Kasturi is an adult residing in Illinois, was a senior attorney for each Debtor and was responsible for hiring, firing, training and supervising attorneys employed by the Debtors, and supervised many of the Debtors' operations, including its call center (*Id*. at Par. 3 and 216);
>
> (4) Managing attorneys (i.e., attorneys who worked at a "hub office") reported to Kasturi in some instances (*Id*. at Par. 37);
>
> (5) Day-to-day operations of Debtors were managed by Kasturi and other Defendants (*Id*. at Par. 45);
>
> (6) Kasturi was a Senior Attorney for the Debtors (*Id*. at Par. 48);
>
> (7) Kasturi reported to Macey and Aleman (*Id*. at Par. 51);
>
> (8) Kasturi was entitled to receive a salary and to participate in the Debtors' profits (*Id*. at Par. 52);
>
> (9) The Debtors made not less than $331,231.44 of transfers to Kasturi in the one year period prior to the Petition Date ("One Year Transfers") (*Id*. at par. 194);
>
> (10) The Debtors made not less than $12,908.00 in 401(k) contributions and $1,056,632.07 in other transfers in the two year period prior to the Petition Date (*Id*. at par. 195);

5

(11) The Debtors made not less than $59,890.38 in transfers for profit sharing, $26,072.00 in 401(k) contributions and $2,315,188.48 in other transfers in the four years prior to the Petition Date (*Id*. at par. 196);

(12) At all relevant times, Kasturi was a "Senior Attorney" of the Debtors (*Id*. at par. 215);

(13) Kasturi owed a duty of care to Macey Law and its clients (*Id*. at par. 217);

(14) Kasturi breached the above-referenced "duty of care" by purportedly failing to: (a) provide Macey Law's clients with notice that it was ceasing operations and/or supervise Macey law employees relative to the same; (b) track clients who objected to transfers; (c) safeguard confidential client information: (d) return client funds; (e) ensure that Macey Law terminated attorney-client relationships in accordance with applicable laws and rules; (f) maintain business records reflecting the entities' assets, liabilities, accounts payable, receivables and the location of client files; and (g) transferring the above-described sums to herself (*Id*. at par. 218).

Relative to sums purportedly transferred to Kasturi in the 90 days, one year, two years and four years prior to the Petition Date, it is significant to note Mazer-Marino's allegation that the transferred sums "<u>appear</u> to have been wrongfully transferred to … Kasturi [and other Defendants] or entities that they own or control." (*Id*. at par. 224 (emphasis added)).  Of course, "wrongfulness" is not an element to any of the causes of action Mazer-Marino alleges. Moreover, other than the alleged existence of the transfers themselves, Mazer-Marino failed to allege any facts indicating that the transfers were "wrongful" or have any such "appearance," whatever that may mean.  Rather, the transfers (other than 401(k) and similar payments) were overwhelmingly for court filing fees incurred on behalf of M&B clients that were charged to Kasturi's credit cards and can be documented.  It is beyond disturbing that Mazer-Marino would include such incendiary allegations without factual support.  This will be the topic of a Rule 11 letter and contention interrogatories to Mazer-Marino.  Moreover, the vast majority of the allegations concerning Kasturi are false, as will become readily apparent if this case progresses.

Nevertheless, the above, profoundly limited averments are the foundation for Mazer-Marino's baseless claims against Kasturi, and are taken as true for purposes of this Motion.

**IV.    Marino Fails to State a Claim for Relief for Counts III-X**

Counts III through IX allege purported preferential payments and fraudulent transfers (both actual and constructive) for which avoidance and recovery is sought under both the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act.  Insolvency is a required element for each of these claims, and Mazer-Marino's failure to allege any facts to support her conclusory allegation of insolvency is fatal as to all of these counts.

The complaint alleges that Kasturi is an insider and, thus, the one-year rather than 90-day preference lookback period applies.  Insolvency is presumed during the 90 days prior to bankruptcy, but Mazer-Marino, as plaintiff, bears the burden of proof as to the insolvency element for the period that is 91 days to one year prior to the Petition Date.  11 U.S.C. § 547(f).

The Complaint alleges that on March 14, 2014, an involuntary bankruptcy was filed against each of the Debtors.  (*Id*. at par. 15.)  Thus, Debtors are presumed to have been insolvent during the 90-day period that runs from December 14, 2013 through the Petition Date.  Because none of the alleged transfers to Kasturi were made during the 90-day period prior to the Petition Date, Mazer-Marino bears the burden of proof as to the insolvency element with respect to <u>all</u> of the alleged transfers to Kasturi.[3]  Mazer-Marino failed to allege any facts supporting a conclusion that the Debtors were insolvent at the time of the transfers, including her failure to allege any facts concerning the Debtors' financial status <u>at any time</u>.  The sum total of Mazer-Marino's allegations concerning insolvency consist of the following conclusory averments:

---

[3]    Three exhibits to the Complaint identify all of the transfers that are alleged to have been made to Kasturi.  *See* Complaint, Exs. L, I and J.  None lists a single transfer to Kasturi during the 90-day period.

(1) "Based upon a review of the Debtors' accounting records and tax returns, the Debtors were insolvent on the dates that the One Year Transfers were made" (Complaint, Par. 241);

(2) "Debtors were insolvent or became insolvent shortly after the transfers were made" (*Id*., Par. 247(h) and 265(g));

(3) "Based upon a review of the Debtors' accounting records and tax returns, the Debtors (i) were insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (ii) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was an unreasonably small capital; or (iii) intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured" (*Id*., Par. 253);

(4) "Based upon a review of the Debtors' accounting records and tax returns, the Debtors were insolvent at the time of such transfers" (*Id*., Par. 276);

(5) "Based upon a review of the Debtors' accounting records and tax returns, the Debtors were insolvent on the date that each of the One Year Transfers were made" (Id., Par. 282). Each of these is a naked legal conclusion.

As these allegations are entirely conclusory and devoid of any specific facts which, if true, would establish insolvency during the relevant time period, Mazer-Marino's claims fail to satisfy the pleading standards establish by *Iqbal* and *Twombly*. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"); *see also Copelan*, 2015 WL 1413107, at *4 ("The court need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice").

The Debtors' insolvency is a required element for all of the purported preference and fraudulent transfer-based claims in Counts III-X of the Complaint. *See* 11 U.S.C. §§ 547(b)(3), 548(a)(1)(B)(ii)(I). Mazer-Marino's failure to allege specific, non-conclusory facts that establish insolvency is fatal under Rule 12(b)(6) and the applicable pleading standards. *In re Commercial Financial Services, Inc.*, 322 B.R. 440 (Bankr. N.D. Okla. 2003) (it is unfair to transferees to

8

allow debtors to proceed with claims if debtors could not declare that they had evidentiary support for essential elements of claims, including insolvency); *In re Caremerica, Inc.,* 415 B.R. 200, 208 (Bankr. E.D.N.C. 2009) (trustee failed to plead facts supporting the debtors' insolvency at the time of the transfer.); *In re DBSI, Inc.*, 476 B.R. 413 (Bankr. D. Del. 2012) (to state claim to avoid constructively fraudulent transfer under Code, complaint must allege specific facts showing debtors' financial position and the value of what was received in exchange of the transfer). As a result, Counts III-X of the Complaint must be dismissed as a matter of law.

Further, in her attempt to expand the 90 day preference period, Mazer-Marino merely concludes, without support as to Kasturi, that "[e]ach of Macey, Aleman, and Kasturi are insiders of the Debtors within the meaning of Bankruptcy Code section 101 and case law." (Complaint, Par. 238 and see also Pars. 247(b), 258, 265(a), and 280.) As to Kasturi, Mazer-Marino was obligated to allege facts showing that Kasturi was an insider, meaning that she was in a position to "exercise sufficient authority over the corporate debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *In re Borders Group, Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011) (citation omitted); *In re Global Aviation Holdings, Inc*., 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012). Contrary to this requirement, as the above-quoted allegations from the Complaint demonstrate, Mazer-Marino merely concludes that Kasturi was an insider without alleging specific facts pertaining to Kasturi's purported insider status.

Importantly, merely being involved in the Debtors' business activities is not enough. Facts must be alleged demonstrating that Kasturi had the ability to unqualifiedly dictate corporate policy and dispose of corporate assets. *Borders*, 453 B.R. at 469. No such facts are (or can be) alleged. The closest Mazer-Marino comes are her allegations that Kasturi was involved with hiring, firing, training and supervising employed attorneys, and that she supervised

9

many unspecified aspects of the Debtors' operations, including a call center. None of these, even if true, allege or support an inference that Kasturi could unqualifiedly dictate corporate policy or dispose of corporate assets. Further, even if such an inference were drawn, there is no allegation Kasturi could make policy decisions or asset disposition decisions unqualifiedly, unilaterally and without being supervised. On the contrary, the Complaint alleges Kasturi reported to and was supervised by others, including Macey and Aleman. Mazer-Marino commits another fatal flaw by failing to allege any non-conclusory facts that Kasturi was an insider. As a result, because the preference claims against Kasturi all relate to the lookback period applicable only to insiders, the preference counts in Mazer-Marino's Complaint must be dismissed.

In addition, although Mazer-Marino concluded that Kasturi was an owner and officer of Debtors, she failed to allege any facts supporting these conclusions. For example, officers of corporations hold titles, like president, and owners possess stock in the corporation. Mazer-Marino clearly recognized as much by making such allegations as to other defendants. For example, Mazer-Marino specifically alleged the following concerning Macey:

(1) "Macey … was the (a) **president** of each of the Debtors; (b) owner of MBL; (c) owner of Macey Bankruptcy Law, LLC, which in turn is a partner in J&M: and (d) supervised, among others, Aleman, Gustafson and Kasturi" (*Id*. at Par. 5, emphasis added);

(2) "The Debtors were owned and controlled by Macey" (*Id*. at Par. 44); and

(3) "As the **sole shareholder** of MBL [Macey Law], **Macey controlled the Debtors' business** and supervised the agents of MBL, including but not limited to Aleman, Kasturi and Gustafson" (*Id*. at par. 208); and (3) "Macey owned and controlled the Debtors". (*Id*. at Par. 247(a), emphasis added.)

While subparagraph (2) above is a naked conclusion, in subparagraphs (1) and (3), Mazer-Marino alleged facts that Macey was president of each Debtor, thereby identifying him as an officer, and that he was the sole shareholder of Macey Law, thereby alleging facts from which a conclusion that Macey owned the entity could be drawn. In stark contrast, Mazer-Marino

never alleges that Kasturi held any particular office (Kasturi did not) nor does Mazer-Marino allege that Kasturi was a shareholder (she was not) or member of any LLC (she was not). Moreover and obviously, since Macey solely owned the Debtors, Kasturi could not be an owner. Lastly, Mazer-Marino plainly failed to allege any facts supporting a conclusion that Kasturi "controlled" Debtors, particularly when the Complaint alleges that Macey controlled the Debtors and that he and Aleman specifically supervised Kasturi. There are no allegations that Kasturi had any ability to dictate corporate policy or to dispose of corporate assets (she did not), let alone the ability to do so unqualifiedly.

In order to allege insider status, which is defined at 11 U.S.C. § 101, attention must also be paid to whether the entity in question is a corporation or a limited liability company. According to the Complaint, Macey Law is an Illinois professional corporation. (*Id*. at Par. 20.) Thus, Mazer-Marino was required to allege facts that Kasturi was an officer, debtor, general partner of the Debtor or its relative. Mazer-Marino does not make any such factual allegations.

Mazer-Marino failed to allege any facts showing that Kasturi was an insider, which is also fatal to all claims against Kasturi in Counts III-IV, VI-VII, and X, all of which must be dismissed as a matter of law.

V.    Counts IV-X Must Be Dismissed for Violating Rules 8 and 9

Rule 9(b) explains that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under this rule, bankruptcy courts have required a more rigorous pleading standard to "state with particularity the circumstances constituting fraud." *In re Equipment Acquisition Resources, Inc.,* 481 B.R. 422, 430- 31 (Bankr. N.D. Ill. 2012). Mazer-Marino was required to allege the "who, what, when, where, and how" of the alleged fraud: "the first paragraph of any newspaper story." *In re Vivendi Universal, S.A. Sec.*

*Litig.*, 381 F. Supp. 2d 158, 165 (S.D.N.Y. 2003) *(quoting DiLeo v. Ernst & Young*, 901 F. 2d 624, 627 (7th Cir. 1990)). With respect to the fraud-in-fact counts (Counts IV, VII and X), Mazer-Marino fails to satisfy the pleading requirements of Rule 9(b). In *In re Geltzer*, the court listed three elements which must be alleged to state a claim for an actual fraudulent transfer with the requisite particularity: "(1) the property that was conveyed, (2) the timing and, if applicable, frequency of the transfer, and (3) the consideration, if any, paid for the transfer…." 502 B.R. 760, 769 (Bankr. S.D.N.Y. 2013) (*quoting O'Connell v. Pension Fin. Services, Inc. (In re Arbco Capital Mgmt., LLP*), 07-13283(SCC), 498 B.R. 32, 40-41 (Bankr. S.D.N.Y. 2013)). The court further stated that "[i]n addition to specifically identifying the transfers to be avoided, a party must also sufficiently plead the element of fraudulent intent required by Rule 9(b)." (*Id.)* As noted above, Mazer-Marino has not pled the element of fraudulent intent under the standards of Rule 8, let alone the heightened pleading standards of Rule 9(b). More significantly, Mazer-Marino fails to describe the who, what, when, where, and how of the alleged fraud. In order to have pled properly and to survive a motion to dismiss under Rule 12(b)(6), Mazer-Marino was required to pled that the requisite intent existed with respect to each transfer sought to be avoided and she must connect the allegations against the defendants from whom recovery is sought to the Debtors' scheme to defraud. *Equipment Acquisition Resources, Inc., supra*, 481 B.R. at 433 (finding that the dates and amounts of the transfers were insufficient to survive a motion to dismiss because the trustee failed to describe how the transfers were used to further the scheme to harm other creditors). There is no "fraud by hindsight." *DiLeo, supra*, 901 F. 2d at 628. While Mazer-Marino lists alleged transfers to Kasturi, she fails to describe the "who, what, when, where, and how" of the alleged fraud and, thus, does not satisfy the applicable pleading standards.

12

In Counts V, VI, VIII and IX, Mazer-Marino raises fraud-at-law allegations under Section 548(a)(1)(B) of the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act. When a plaintiff alleges constructive fraud, "the complaint must allege what (or how much) was transferred, when the transfer was made, how it was made, who made it, who received it, and under what circumstances." *Life Fund 5.1 LLC, supra*, 2010 WL 2650024, at *3 (*citing Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009); *Gold v. Winget (In re NM Holdings Co.)*, 407 B.R. 232, 261 (Bankr. E.D. Mich. 2009)). Here, Mazer-Marino failed to allege whether any consideration was paid for the transfers to Kasturi, and if so, the value of the consideration given. Mazer-Marino's constructive fraudulent conveyance counts merely recite the elements of the cause of action. No facts are provided, let alone any detail regarding the circumstances of each **or any** transfer. To the extent the allegation that the transfers were made on account of an antecedent debt has been incorporated into the actual fraud count, "[p]ayment of a debt is not by itself fraudulent." *In re Moo & Oink, Inc.*, 2012 WL 1414834, at *3 (N.D. Ill. Bankr. Apr. 20, 2012) (holding that the complaint failed to allege sufficient facts to draw any inference that what occurred was unlawful, and must be dismissed). Since Mazer-Marino failed to meet the pleading requirements of Rules 8, 9 and *Iqbal* and *Twombly*, Counts IV through X must be dismissed.

### V.    Dismissal of Count I for Negligence

The elements necessary to support a negligence claim are duty, breach, causation and damages. *Bonner v. City of Chicago*, 778 N.E.2d 285, 288 (Ill. App. (1st Dist.) 2002). Of course, a plaintiff must also have standing to assert the subject claims.

Relative to the duty element, it is significant to note the absence of any factual detail pertinent to Kasturi's actual duties, functions and responsibilities. For example, concluding that

Kasturi "oversaw the Debtors operations" is a conclusion that glosses over what "operations" she purportedly oversaw and what she actually did. For example, it is alleged that Kasturi oversaw a call center, but there are no facts alleged to conclude that one who did so had any oversight of functions such as accounting, handling corporate funds, handling client funds or even communicating with clients. Merely alleging someone oversaw a call center fails to provide any facts as to what this "oversight" entailed. No facts are alleged that Kasturi's duties in supervising or overseeing a call center included communicating with Macey Law clients on any topic, let alone: (a) the substance of a client's representation (she was not involved); (b) terminating attorney-client relationships (she was not involved); (c) handling, managing or returning client funds (she was not involved); (d) maintaining business records concerning assets, liabilities, payables, receivables and the location of client files (she was not involved); and (e) making any payments on behalf of any Debtor, including the allegedly wrongful transfers (she was not involved). Each of the foregoing comprises the essence of the "breaches" Mazer-Marino alleges Kasturi committed. However, no facts are alleged that Kasturi's duties and functions included any of these "duties." Mazer-Marino failed to allege any facts demonstrating that Kasturi had any of the duties she purportedly breached, which is fatal to the duty element.

      Before Mazer-Marino could ever allege that Kasturi breached a duty, Mazer-Marino first was obligated to allege facts demonstrating that Kasturi had the subject duty. Because no facts are alleged to indicate that Kasturi had any of the duties she purportedly breached, there are likewise no facts alleged supporting the breach element. Indeed, the reason Mazer-Marino omitted any such factual allegations is because Kasturi's role did not include any of the duties Mazer-Marino baselessly accuses her of breaching. Further, although Mazer-Marino alleges that Macey Law was injured by Kasturi's "breaches," because Mazer-Marino failed to allege facts

supporting the duty and breach elements, Mazer-Marino's causation and damages allegations also fail.

Notably, Mazer-Marino also alleges that Macey Law clients and Acquiring Attorneys (i.e., attorneys to whom cases were transferred) were purportedly damaged. Each of these is not a party to the Complaint, there are no factual allegations that Mazer-Marino acquired any rights of these third-parties and, most importantly, Mazer-Marino failed to allege any facts that any of these third-parties were actually damaged. For example, there are no allegations that any Macey Law client or Acquiring Attorney has made any claim against Macey Law for any breach attributable to Kasturi or any other Defendant, nor that Mazer-Marino has become obligated to pay damages arising out of the same. Instead, and most tellingly, Mazer-Marino baselessly concludes that Kasturi's "breach" " … resulted in injuries to Acquiring Attorneys in an amount to be determined." (*Id*. at par. 222.) This is not a factual allegation but merely a conclusion. Moreover, absent factual allegations that Mazer-Marino stands in the shoes of, for example, a Macey Law client or an Acquiring Attorney, she lacks standing to assert any claims such individuals might theoretically possess but have not asserted.

**VI.    Mazer-Marino's Request for Attorneys' Fees Must be Stricken**

Each prayer for relief against Kasturi ends with a request for attorneys' fees. Federal Rule of Civil Procedure 54(d)(2)(A)-(C) and (E) (relating to attorney's fees) apply to adversary proceedings through Rule 7054(b)(2). Rule 54(d)(2) provides that a claim for attorneys' fees "must be made by motion" and the motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." (FRCP Rule 54(d)(2)(A)-(B)(ii).) These rules are in line with the "American Rule" applied to federal litigation, providing that a prevailing litigant may not collect a reasonable attorney's fee from his opponent unless authorized by

federal statute or an enforceable contract between the parties. *See Precise-Marketing Corp. v. Simpson Paper Co.*, 1999 U.S. Dist. LEXIS 6325, *41 (S.D.N.Y. 1999); *Petrello v. White*, 2012 U.S. Dist. LEXIS 95387, *10-11 (E.D.N.Y. 2012) ("generally in New York 'in a breach of contract case, a prevailing party may not collect attorneys' fees from the nonprevailing party unless such award is authorized by agreement between the parties, statute or court rule'").  This rule applies to litigation in the bankruptcy courts. *In re Sheridan*, 105 F. 3d 1164, 1166 (7th Cir. Bankr. 1997) (denying a Chapter 11 debtor attorney's fees expended in defending a creditor's non-dischargeability action after debtor prevailed). A contractual provision authorizing recovery of attorney's fees may be enforceable if the provision is valid under state law. *In re Velarde*, 461 B.R. 527, 529 (N.D. Ill. Bankr. 2011). "Absent statutory authorization, a demand for attorneys' fees is only granted in unusual circumstances." *In re Stanisz*, 2009 WL 412696, at *2 (N.D. Ill. Bankr. Jan. 28, 2009).

Mazer-Marino failed to allege any statutory, contractual or other basis authorizing recovery of attorney's fees. As such, Mazer-Marino has failed to state the grounds entitling her to attorneys' fees as a matter of law and the prayer for such relief must be stricken.

WHEREFORE, Defendant, SHOBHANA KASTURI, requests that this Honorable Court grant her Motion to Dismiss, dismiss the Complaint filed against her and award her such other and further relief as this Court deems just and proper, including an award of costs.

| | |
|---|---|
| Dated: New York, New York<br>September 8, 2015 | HORWOOD MARCUS & BERK CHARTERED<br><br>By: /s/ Jason M. Torf<br>Jason M. Torf (admitted *pro hac vice*)<br>500 W. Madison St.<br>Suite 3700<br>Chicago, IL  60661<br>(312) 606-3236 (phone)<br>(312) 267-2202 (facsimile)<br>jtorf@hmblaw.com<br><br>*Attorneys for Shobhana Kasturi* |

2704190/4/16221.000